MICHIGAN EMPLOYMENT RELATIONS COMMISSION v
MUGERIAN

OPINION OF THE COURT

1. LABOR RELATIONS—STATUTES—AFFIRMATIVE ACTION—UNFAIR LA-
   BOR PRACTICES—EMPLOYEES—AUTHORIZATION CARDS—EVIDENCE
   —COLLECTIVE BARGAINING—ELECTIONS.

   The Michigan act on labor relations and mediation in broad
   language authorizes an order requiring whatever affirmative
   action is necessary to promote the fair labor policies of the act;
   therefore, where the record discloses competent, material and
   substantial evidence of unfair labor practices by an employer
   which tends to undermine the workers' majority strength and
   impede the process of union election, an order to cease and
   desist from those practices, to reinstate wrongfully discharged
   employees, and for compulsory collective bargaining with the
   union prior to its secret ballot election as sole bargaining agent
   is justified where a majority of the employees concerned have
   signed authorization cards for the union to bargain for them
   (MCLA 423.23[c]).

CONCURRENCE BY O'HARA, J.

2. LABOR RELATIONS—COLLECTIVE BARGAINING—REPRESENTATION—SE-
   CRET BALLOT—AUTHORIZATION CARDS—STATE STATUTES—FED-
   ERAL PRECEDENT.

   *It is within the permissible limits of Federal precedent, but
   nevertheless bad law, to allow by judicial decision the substitu-
   tion of union authorization cards, which are openly circulated
   and therefore subject the employees who sign them to worker
   peer pressure, for the legislatively approved secret ballot as a
   means of selecting an exclusive bargaining representative un-
   der the Michigan act on labor relations and mediation.*

Original action in the Court of Appeals. Submit-

REFERENCES FOR POINTS IN HEADNOTES
[1] 48 Am Jur 2d, Labor and Labor Relations §§ 1294–1297.
[2] 48 Am Jur 2d, Labor and Labor Relations § 1174.

ted Division 2 November 6, 1974, at Lansing. (Docket No. 19537.) Decided January 9, 1975.

Petition by the Employment Relations Commission for enforcement of its order of October 25, 1973, against Sam Mugerian and George Mugerian, doing business as The East Jefferson Clock Company. The Hotel, Motel, Restaurant Employees, Cooks and Bartenders Union, Local No. 24, of the Hotel and Restaurant Employees and Bartenders International Union, AFL-CIO, intervened as petitioners. Order of enforcement granted.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Francis W. Edwards,* Assistant Attorney General, for Michigan Employment Relations Commission.

*Miller, Klimist, Cohen, Martens & Sugerman, P. C.* (by *Murray A. Gorchow),* for Hotel, Motel, Restaurant Employees, Cooks and Bartenders Union, Local No. 24, of the Hotel and Restaurant Employees and Bartenders International Union, AFL-CIO.

*William E. Bufalino, II,* for defendants.

Before: QUINN, P. J., and McGREGOR and O'HARA,* JJ.

QUINN, P. J. Plaintiff has petitioned for enforcement of its October 25, 1973 order against defendants.

In July of 1969, defendants, hereinafter employer, opened a restaurant in Detroit. October 16,

_____

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

1971, two representatives of Hotel and Restaurant Employees International Union distributed union organization materials and authorization cards to the employees. On this date, the restaurant was open 24 hours a day and employed 37 to 41 employees. A majority of the employees signed the authorization cards, and on or about October 27, 1971, the union sent employer a letter demanding recognition as exclusive bargaining agent for the employees. About the same date, the union petitioned for an election.

Employer did not respond to the union, although it knew of the unionization efforts as early as October 20, 1971. October 25, 1971, employer advertised in a Detroit newspaper for waitresses for the restaurant. October 26, 1971, employer closed the restaurant for repair of a ceiling smoke damaged early in September without notifying employees of the closing.

October 29, 1971, the union filed unfair labor practice charges against the employer. November 12, 1971, the restaurant was reopened but the midnight shift was eliminated. Only 15 employees were called back to work and eight new employees were hired.

Following a hearing on the unfair labor practice charges, the administrative law judge found that employer had engaged in unfair labor practices within the meaning of § 16(1), (3) and (6) of the labor relations and mediation act, MCLA 423.16; MSA 17.454(17). Based on these findings, the administrative law judge recommended that plaintiff issue an order requiring employer to (1) cease and desist from engaging in illegal activity; (2) reinstate employees who were discharged, with back pay; (3) take the affirmative action of bargaining with the union. The recommended order issued and plaintiff now seeks enforcement of that order.

Employer basically opposes enforcement on two grounds:

1. Insufficient evidence to support the commission's findings of fact.

2. Neither the facts nor the statute justifies an order to bargain prior to an election.

Our review of the whole record discloses competent, material and substantial evidence that supports the findings of fact by plaintiff, Const 1963, art 6, § 28. Those fact findings justify an order to bargain prior to election. The question is, does the statute authorize such an order?

Research has disclosed no Michigan authority on this question; hence, we may look to federal case authority for a solution, *Detroit Police Officers Association v City of Detroit,* 391 Mich 44; 214 NW2d 803 (1974). *NLRB v Gissel Packing Co,* 395 US 575; 89 S Ct 1918; 23 L Ed 2d 547 (1969), is factually similar to the case before us. In *Gissel,* the Supreme Court upheld a bargaining order issued prior to election on the basis that the unfair labor practices there involved had a tendency to undermine the majority strength and impede the election process. The unfair labor practices of employer in the case at bar had the same tendency and the broad language:

" * * * an order requiring such person * * * to take such affirmative action * * * as will effectuate the policies of this act",

found in MCLA 423.23(c); MSA 17.454(25)(c) authorizes the order which plaintiff now seeks to enforce.

An order of enforcement will issue, but without costs, a public question being involved.

McGregor, J., concurred.

O'Hara, J. *(concurring in result).* I would lack candor were I not to concede that there is ample *legal* basis for Judge Quinn's holding that *NLRB v Gissel Packing Co,* 395 US 575; 89 S Ct 1918; 23 L Ed 2d 547 (1969), authorizes compulsory collective bargaining with a union on a showing of a majority of signed authorization cards together with "the absence of any bona fide dispute". 23 L Ed 2d at 569.

I am compelled to concede also that there is a determination by this state's fact finding body that the dual requirements of *Gissel* were met in this case.

Thus it follows without question that Judge Quinn's decisional holding is well within the *permissible* limits of *Gissel.*

As I read it, *Gissel* is permissive and not mandatory. Though I may well be *vox clamantis in deserto,*[1] I feel a judicial obligation to record that in my view *Gissel* is bad law. It is bad law because the open circulation of cards requesting agreement to compel a union election which might well result in ill feelings against those who refuse to sign is not the same thing as participation in an election by secret ballot where a vote for or against unionization or the choice of an exclusive bargaining agent runs no such risk.

We, as a nation and as sovereign states, entrust the selection of our executive, legislative and, in some instances, judicial leadership to the secret ballot process. The Congress saw fit to provide for such a process in the selection or rejection of a collective bargaining unit.

We are not a judicial oligarchy. It ill behooves

---

[1] —a voice crying in the wilderness—Biblical reference occurring in Matthew iii, 3; Mark i, 3; Luke iii, 4; and John i, 23, quoting Isaiah xl, 3.

the judiciary then, by decision, to substitute card signing for this process. This, I think, is what *Gissel* does.

Outvoted, outmanned and outgunned, I cannot but accede. Even Marines who never retreat sometimes advance to the rear.

With reluctance I concur in the result reached by Judge QUINN and my other colleague.